1
2
3                                    O
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   CENTRAL DISTRICT OF CALIFORNIA
10
11   CHERYLE ANN                 )   Case No. CV 12-1094-OP
     MONTGOMERY,                 )
12                               )
                  Plaintiff,     )   MEMORANDUM OPINION; ORDER
13         v.                    )
                                 )
14   MICHAEL J. ASTRUE,          )
     Commissioner of Social Security, )
15                               )
                  Defendant.     )
16                               )

17         The Court[1] now rules as follows with respect to the disputed issues listed in
18   the Joint Stipulation ("JS").[2]
19   / / /
20   / / /
21   / / /
22
23   _____
24         [1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before
     the United States Magistrate Judge in the current action.  (See ECF Nos. 7, 15.)
25
26         [2]  As the Court stated in its Case Management Order, the decision in this
     case is made on the basis of the pleadings, the Administrative Record, and the
27   Joint Stipulation filed by the parties.  In accordance with Rule 12(c) of the Federal
     Rules of Civil Procedure, the Court has determined which party is entitled to
28   judgment under the standards set forth in 42 U.S.C. § 405(g).  (ECF No. 6 at 3.)

                                      1

# I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1)     Whether the Administrative Law Judge ("ALJ") properly determined Plaintiff's residual functional capacity in light of his (a) determination of Plaintiff's credibility, (b) rejection of the opinions of Plaintiff's treating physicians, and (c) consideration of the consultative examiner's opinion; and

(2)     Whether the ALJ properly found that Plaintiff was capable of performing alternative work.

(JS at 4-13, 31-39.)

# II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

# III.

## DISCUSSION

### A.   The ALJ's Findings.

The ALJ found that Plaintiff has the severe impairments of status post thoracotomy, chronic obstructive pulmonary disease, emphysema, depressive disorder, and history of polysubstance abuse.  (Administrative Record ("AR") at 15.)  The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work with the following limitations:  Plaintiff is able to lift twenty pounds occasionally and ten pounds frequently; sit and stand for six hours in an eight-hour day; occasionally climb; be exposed to a minimal amount of pulmonary irritants; and perform only simple, routine tasks.  (Id. at 18.) Relying on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff was not capable of performing her past relevant work as a certified nurse aid but could perform alternative work as ticket taker and small products assembler.  (Id. at 19-20.)

### B.   The ALJ's Consideration of Plaintiff's Credibility.

Plaintiff argues that the ALJ's RFC assessment was flawed because it was the result of underlying errors.  First, Plaintiff contends that the ALJ improperly rejected her subjective complaints of impairment.  (JS at 4-7.)

In his decision, the ALJ rejected Plaintiff's credibility as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limited effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> In terms of the claimant's alleged mental limitations, the record shows multiple diagnosis of alcohol-induced mood disorder.  The

3

1    claimant testified that she has been sober since August 17, 2009.  Since
2    that date, the record shows that the claimant has received very little
3    physiological or medical treatment.

4        Additionally, a treating physician diagnosed the claimant with
5    malingering disorder.  It was noted that the claimant was consciously
6    selecting past material to make her condition appear worse.  Given this
7    evidence, the undersigned assigns little weight to the claimant's reports
8    to her physicians.

9  (AR at 18-19 (citations omitted).)

10       An ALJ's assessment of pain severity and claimant credibility is entitled to
11 "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v.
12 Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  When, as here, an ALJ's disbelief of a
13 claimant's testimony is a critical factor in a decision to deny benefits, the ALJ
14 must make explicit credibility findings.  Rashad v. Sullivan, 903 F.2d 1229, 1231
15 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also
16 Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that
17 claimant was not credible is insufficient).

18       Under the "Cotton test," where the claimant has produced objective medical
19 evidence of an impairment which could reasonably be expected to produce some
20 degree of pain and/or other symptoms, and the record is devoid of any affirmative
21 evidence of malingering, the ALJ may reject the claimant's testimony regarding
22 the severity of the claimant's pain and/or other symptoms only if the ALJ makes
23 specific findings stating clear and convincing reasons for doing so.  See Cotton v.
24 Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d
25 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993);
26 Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).  In other words, an ALJ
27 may reject a claimant's testimony only upon "(1) finding evidence of malingering,
28 or (2) expressing clear and convincing reasons for doing so."  Benton ex. el.

4

1  Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).

2      To determine whether a claimant's testimony regarding the severity of his

3  symptoms is credible, the ALJ may consider, among other things, the following

4  evidence:  (1) ordinary techniques of credibility evaluation, such as the claimant's

5  reputation for lying, prior inconsistent statements concerning the symptoms, and

6  other testimony by the claimant that appears less than candid; (2) unexplained or

7  inadequately explained failure to seek treatment or to follow a prescribed course of

8  treatment; (3) the claimant's daily activities; and (4) testimony from physicians

9  and third parties concerning the nature, severity, and effect of the claimant's

10  symptoms.  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also

11  Smolen, 80 F.3d at 1284.  Social Security Ruling 96-7p further provides that an

12  individual may be less credible for failing to follow prescribed treatment without

13  cause.  Soc. Sec. Ruling 96-7p.

14      Here, the ALJ cited to evidence that Plaintiff had been diagnosed with

15  malingering and was found to "consciously select[] past material to make herself

16  appear worse." (AR at 19.)  The record supports this finding.  (Id. at 326, 332.)  In

17  light of the evidence of malingering, the ALJ was relieved of his duty to provide

18  clear and convincing reasons for rejecting Plaintiff's credibility.[3]  Nevertheless, in

19

20

21  [3] The ALJ provided an additional reason for rejecting Plaintiff's credibility:

22  the record contained little evidence of medical treatment since Plaintiff's alleged
   sobriety date of August 17, 2009. (AR at 18.)  This reason, however, is not clear

23  and convincing.  Despite evidence that Plaintiff received routine medical care
   throughout the period at issue, the record is nearly devoid of any treatment notes

24  from Plaintiff's treating physician Seya Eshraghi, M.D., and treating psychologist
   Thomas Eby, Ph.D.  In fact, of the 520 pages contained in the Administrative

25  Record, it seems just twenty-five pages pertain to routine medical treatment of

26  Plaintiff by any provider.  (Id. at 337-43, 489, 496-09, 518-20.)  On the other
   hand, the vast majority of the medical records pertain to inpatient surgical or

27  psychiatric treatment, or emergency room visits.  The lack of records reflecting

28                                                          (continued...)

light of other evidence in the record indicating that Plaintiff is not a malingerer (see, e.g., 496, 502, 506) and because this action must be remanded as discussed below (see Discussion supra Part III.C), upon remand the ALJ should reconsider Plaintiff's credibility and set forth legally sufficient reasons for rejecting her credibility, if the ALJ again determines rejection is warranted.[4]

**C.    The ALJ Failed to Properly Consider the Opinions of the Treating Physician and Psychologist.**

Plaintiff contends that the ALJ's erroneous RFC assessment was the result of the improper rejection of the opinions of Plaintiff's treating physician and psychologist.  (JS at 7-12.)

The record contains two documents authored by Plaintiff's treating psychologist, Thomas Eby, Ph.D.  First, in an April 15, 2009, assessment, Dr. Eby diagnosed Plaintiff with "Depression NOS (R/O Substance Induced Mood Disorder; R/O Major Depression, recurrent, moderate)," polysubstance abuse, relational problem NOS, and posttraumatic stress disorder.  (AR at 499.)  Dr. Eby reported Plaintiff's Global Assessment of Functioning was 45/50, and her prognosis was fair.  (Id. at 499-500.)

In a June 9, 2009, Mental Impairment Questionnaire, Dr. Eby reported a diagnosis of Major Depression, with symptoms of sleep disturbance, mood

---

[3](...continued)
medical care following Plaintiff's alleged sobriety date is not surprising in light of the lack of evidence of her routine medical care as a whole.  Significantly, of the few pages pertaining to routine medical treatment, one page reflects continued psychiatric care and a regimen of prescription medication after Plaintiff's alleged sobriety date.  (Id. at 520.)  Moreover, the fact that Plaintiff did not require inpatient or emergency care in the six months between her alleged sobriety date and the hearing before the ALJ is little proof that she did not continue to suffer from the symptoms alleged.

[4]   The Court expresses no view on the merits.

6

1   disturbance, emotional lability, anhedonia or pervasive loss of interests, feelings

2   of guilt or worthlessness, difficulty thinking or concentrating, suicidal ideation or

3   attempts, perceptual disturbances, social withdrawal or isolation, deceased energy,

4   intrusive recollections of a traumatic experience, and persistent irrational fears.

5   (Id. at 505.)  Dr. Eby opined that Plaintiff was extremely limited in her ability to

6   understand and remember detailed instructions, carry out detailed instructions, set

7   realistic goals or make plans independently of others, deal with stress of

8   semiskilled and skilled work, and interact appropriately with the general public.

9   (Id. at 508.)  Dr. Eby found that Plaintiff suffers from marked limitations in her

10  ability to maintain attention for two-hour segments, maintain regular attendance

11  and be punctual within customary tolerances, sustain an ordinary routine without

12  special supervision, perform at a consistent pace without an unreasonable number

13  of rest periods, ask simple questions or request assistance, accept instructions and

14  respond appropriately to criticism from supervisors, get along with co-workers or

15  peers without unduly distracting them or exhibiting behavioral extremes, respond

16  appropriately to changes in a routine work setting, deal with normal work stress,

17  be aware of normal hazards and take appropriate precautions, maintain socially

18  appropriate behavior, travel in unfamiliar place, and use public transportation.  (Id.

19  at 507-08.)  Dr. Eby further concluded that Plaintiff was moderately limited in her

20  ability to remember work-like procedures, understand and remember very short

21  and simple instructions, carry out very short and simple instructions, work in

22  coordination with or proximity to others without being unduly distracted, make

23  simple work-related decisions, and adhere to basic standards of neatness and

24  cleanliness.  (Id.)  Dr. Eby also reported that Plaintiff was markedly limited in her

25  activities of daily living and in maintaining social functioning.  (Id. at 509.)  He

26  opined that Plaintiff would experience frequent deficiencies of concentration,

27  persistence, or pace, and would have repeated episodes of deterioration or

28  decompensation in work or work-like settings.  (Id.)

1    The record contains just a single document authored by Plaintiff's treating

2    physician, Seya Eshraghi, M.D.  In that April 21, 2009, Physical Residual

3    Functional Capacity Questionnaire, Dr. Eshraghi reported a diagnosis of COPD,

4    major depressive disorder, bipolar mood disorder, history of pericarditis, and left

5    hand carpal tunnel syndrome.  (Id. at 501.)  Dr. Eshraghi described Plaintiff's

6    symptoms, complaints of pain, and the supporting clinical findings.  (Id.)  Dr.

7    Eshraghi reported that Plaintiff's symptoms constantly interfere with attention and

8    concentration needed to perform even simple work tasks, she would be incapable

9    of even low stress jobs, she can only walk one block without rest, she can sit for

10   thirty minutes at a time, she can stand for ten minutes at a time, she would require

11   unscheduled twenty-minute breaks from work every hour, and could rarely lift less

12   than ten pounds.  (Id. at 502-03.)  The doctor further reported that Plaintiff could

13   occasionally hold her head in a static position; could rarely twist, stoop, and climb

14   stairs; and could never crouch and climb ladders.  (Id. at 504.)  According to Dr.

15   Eshraghi, Plaintiff would suffer from good days and bad days, and would likely be

16   absent from work more than four days a month as a result of impairments or

17   treatment.  (Id.)

18        In his decision, the ALJ offered the following discussion concerning Drs.

19   Eby and Eshraghi:

20             As for the opinion evidence, the undersigned gives little weight

21        to the opinions at Exhibit 32F and Exhibit 33F.  While these reports

22        assign quite severe limitations on the claimant, these opinions are not

23        supported by the other evidence in the record and the treatment notes,

24        if any, from these professionals do not support their opinions.

25   (Id. at 19 (citations omitted).)

26        It is well established in the Ninth Circuit that a treating physician's opinion

27   is entitled to special weight, because a treating physician is employed to cure and

28   has a greater opportunity to know and observe the patient as an individual.

1    McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  "The treating

2    physician's opinion is not, however, necessarily conclusive as to either a physical

3    condition or the ultimate issue of disability."  Magallanes v. Bowen, 881 F.2d 747,

4    751 (9th Cir. 1989).  The weight given a treating physician's opinion depends on

5    whether it is supported by sufficient medical data and is consistent with other

6    evidence in the record.  20 C.F.R. §§ 404.1527(d), 416.927(d).  Where the treating

7    physician's opinion is uncontroverted by another doctor, it may be rejected only

8    for "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

9    1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).  If the treating

10   physician's opinion is controverted, as will be assumed to be the case here, it may

11   be rejected only if the ALJ makes findings setting forth specific and legitimate

12   reasons that are based on the substantial evidence of record.  Thomas v. Barnhart,

13   278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v.

14   Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The ALJ can "meet this burden by

15   setting out a detailed and thorough summary of the facts and conflicting clinical

16   evidence, stating his interpretation thereof, and making findings."  Thomas, 278

17   F.3d at 957 (citation omitted) (quotation marks omitted).

18        First, the ALJ concluded that the opinions cited in the questionnaires

19   authored by Drs. Eby and Eshraghi were not supported by the treatment notes of

20   the doctors.  (AR at 19.)  "The ALJ need not accept the opinion of any physician,

21   including a treating physician, if that opinion is brief, conclusory, and

22   inadequately supported by clinical findings."  Thomas, 278 F.3d at 957; see also

23   Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  Here, the

24   ALJ is correct that the questionnaires are not supported by the treatment notes

25   included in the record.  However, this is because the record is completely devoid

26   of treatment notes from Drs. Eby and Eshraghi, save for a single assessment of

27   Plaintiff by Dr. Eby.  Despite evidence that Plaintiff was treated by these providers

28   for at least a period of months before the hearing before the ALJ, treatment records

9

1   from these sources are almost nonexistent within the Administrative Record.  It is
2   hard to imagine that these medical professionals treated Plaintiff for an extended
3   period without producing a single progress report or treatment note.  The Court is
4   unclear how the record came to be so unrepresentative of Plaintiff's treatment
5   history.  Neither the ALJ nor Plaintiff's counsel have offered an explanation for
6   the lack of treatment records.  (See AR at 30 (indicating that the record contained
7   "everything").)  However, the ALJ has a duty to develop the record and obtain the
8   medical evidence necessary to properly evaluate the claimant's application.
9   Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (ALJ's duty to develop
10  the record is triggered "when the record is inadequate to allow for proper
11  evaluation of the evidence").  This duty applies whether or not the claimant is
12  represented, and is "heightened where the claimant may be mentally ill and thus
13  unable to protect [his or her] own interests."  Tonapetyan v. Halter, 242 F.3d 1144,
14  1150 (9th Cir. 2001) (citing Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir.
15  1992)); see also DeLorme, 924 F.2d at 849 ("In cases of mental impairments, this
16  duty [to develop the record] is especially important.").  It is unjust to fail to fully
17  develop the record regarding these treatment notes and then rely on the lack of
18  supporting treatment notes to reject the opinions of the treating sources.
19  Accordingly, this reason for rejecting the opinions of the treating sources was not
20  legitimate.

21        The ALJ also rejected the treating opinions because they were not supported
22  by other evidence of record.  (Id. at 19.)  "To simply say a medical opinion is not
23  supported by the medical evidence is a conclusory statement and not an adequate
24  reason to reject the opinion."  Schulz v. Astrue, 849 F. Supp. 2d 1049 (W.D.
25  Wash. 2011) (citing Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)).
26  Moreover, the ALJ's conclusion is not supported by the record.  The record is
27  replete with evidence of Plaintiff's numerous psychiatric hospitalizations, routine
28  psychiatric care and medication management, and lung surgery and resulting

1  impairments.  (AR at 207-93, 490-95, 510-20.)  In addition, as discussed more
2  fully below, the consultative examiner found Plaintiff to be at least partially
3  limited due to mood disorder, alcohol dependence, and potential major depression
4  or bipolar disorder.  (Id. at 405-06.)  While most of these records do not attempt to
5  classify the level of Plaintiff's impairments in terms of her ability to perform work
6  activity, as do the reports from Drs. Eby and Eshraghi, they supported the
7  conclusions of the treating sources by confirming Plaintiff's extended medical
8  history and repeated diagnosis of physical and mental impairments.[5]

9       The ALJ's failure to provide legally sufficient reasons for discounting the
10  opinions of Drs. Eby and Eshraghi warrants remand.  See Embrey, 849 F.2d at 422
11  (in disregarding the findings of a treating physician, the ALJ must "provide
12  detailed, reasoned and legitimate rationales" and must relate any "objective
13  factors" he identifies to "the specific medical opinions and findings he rejects");
14  Agnew-Currie v. Astrue, --- F. Supp. 2d ---, 2012 WL 2339584 (D. Ariz. June 19,
15  2012) (finding the application of the Ninth Circuit's credit-as-true rule lies within
16  the discretion of the court and remand for further proceedings can be appropriate

17  _____

18  [5]  The ALJ might have dismissed the evidence of Plaintiff's mental illness
19  on the basis of a finding that her limitations were caused by a long history of
20  alcohol and substance abuse.  (See AR at 18 (finding that Plaintiff suffered from
   an "alcohol-induced mood disorder" and rejecting her credibility on the basis of
21  Plaintiff's limited medical treatment since her alleged sobriety date).)  While the
22  ALJ might have reasonably questioned the extent to which Plaintiff's
   polysubstance abuse was a cause or an effect of Plaintiff's mental illness, this
23  consideration does not take away from the fact that the record contains extensive
24  evidence of Plaintiff's physical and mental impairments that supports the opinions
   of Drs. Eby and Eshraghi.  Whether Plaintiff's substance abuse was a contributing
25  factor to her alleged disability must be considered in a separate analysis.
26  Significantly, however, the agency-contracted consultative examiner concluded
   that Plaintiff suffers from "both a Mood Disorder and Alcoholism" and that she
27  "would still be subject to recurrent depressions whether or not she were drinking."
28  (Id. at 405 (emphasis added).)

1    after an ALJ has failed to give adequate reasons for rejecting a treating source

2    opinion).  Accordingly, remand is required for the ALJ to obtain additional

3    evidence from Plaintiff's treating sources and to set forth legally sufficient reasons

4    for rejecting their opinions, if the ALJ again determines rejection is warranted.[6]

5    **D.    The ALJ's Consideration of the Opinions of the Consultative Examiner.**

6           Plaintiff further complains that the RFC assessment is in error because the

7    ALJ failed to completely consider the opinions of the consultative examiner.  (JS

8    at 12-13.)

9           On September 9, 2008, consultative psychologist, Isadore Wendel, Ph.D.,

10   conducted a Comprehensive Mental Examination of Plaintiff.  Dr. Wendel

11   diagnosed Plaintiff with mood disorder, alcohol dependence, and possible major

12   depression or bipolar disorder.  (AR at 405.)  Dr. Wendel concluded that Plaintiff

13   "would still be subjected to recurrent depressions whether or not she were

14   drinking."  (Id.)  Dr. Wendel reported that Plaintiff "has a desire to succeed," but

15   that "she is unlikely to make much sustained progress."  (Id. at 406.)  He further

16   concluded that Plaintiff has no impairment in social functioning, a mild

17   impairment in the activities of daily living on a psychological basis, and a

18   moderate impairment of concentration, persistence, and pace.  (Id. at 406.)  Dr.

19   Wendel cautioned that Plaintiff "would have repeated episodes of emotional

20   deterioration in work-like situations due to pain."  (Id. at 406.)

21          The ALJ discussed Dr. Wendel's report, as follows:

22                 The claimant underwent a psychological consultative examination

23          on September 9, 2008.  The consultative examiner noted that the

24          claimant had a major mood disorder and alcoholism.  She [sic] opined

25          that the claimant would likely benefit from a review of her psychotropic

26          medications and from psychotherapy, as well as from structured alcohol

27

28
_____

       [6]  The Court expresses no view on the merits.

                                                    12

1    rehabilitation.

2            . . . .

3            With regard to concentration, persistence or pace, the claimant has

4    moderate difficulties.    The consultative examiner opined that the

5    claimant has moderate difficulties with respect to concentration,

6    persistence or pace.

7    (AR at 16-17 (citations omitted).)

8            "As is the case with the opinion of a treating physician, the Commissioner

9    must provide 'clear and convincing' reasons for rejecting the uncontradicted

10   opinion of an examining physician." Lester, 81 F.3d at 830.

11           It is not clear from the ALJ's opinion to what extent he might have credited

12   or rejected portions of Dr. Wendel's assessment.  While it is possible that the

13   consultative examiner's report might be reconciled with the ALJ's opinion, the

14   ALJ did not expressly consider Dr. Wendel's opinion that Plaintiff would suffer

15   repeated episodes of emotional deterioration, that she is "unlikely to make much

16   sustained progress," and that she "would still be subjected to recurrent depressions

17   whether or not she were drinking."  Because this action must be remanded for

18   further consideration of the treating source opinions, upon remand the ALJ should

19   also reconsider the opinions of the consultative examiner and provide reasoning as

20   to whether the consultative examiner's opinions are credited or rejected.

21   **E.    The ALJ's Consideration of Plaintiff's Ability to Perform Alternative**

22         **Work.**

23           Plaintiff argues that the ALJ erred in concluding that Plaintiff can perform

24   alternative work as a ticket taker or small products assembler.  (JS at 31-39.)

25   Plaintiff argues that the ALJ's error was premised on an incomplete hypothetical

26   to the VE because the hypothetical lacked Plaintiff's limitation to simple routine

27   tasks.  According to Plaintiff's argument, the job of ticket taker requires more than

28   simple routine tasks.  (Id. at 34-35.)  Plaintiff further argues that the evidence

13

1    shows she lacks the mental temperament to perform work as a ticket taker.  (<u>Id.</u> at

2    36.)  Finally, Plaintiff argues that the job of small products assembler is not

3    compatible with her limitations in handling and fingering, and in concentration,

4    persistence, and pace.  (<u>Id.</u> at 37-39.)

5         The ALJ posed the following hypothetical to the VE:

6              Let's assume an individual forty-eight years of age, eleven grades

7         of education, and the work experience as you have just described, and

8         for each of these hypotheticals, A and B let's take a person that is

9         limited to, at most, simple routine tasks, and for each hypothetical

10        minimal pulmonary irritants.  Let's add this person in hypo A being able

11        to lift 10 pounds frequently to 20 pounds occasionally, and stand six in

12        eight, sit six in eight, and occasionally climb, bend, or stoop.  Any jobs

13        such a functionally restricted person could perform?

14   (AR at 41.)  The VE testified that such an individual could perform work as a

15   ticket taker and a small products assembler.  (<u>Id.</u>)

16        The ALJ then posed a second hypothetical to the VE:

17             Lets have this person able to lift 5 pounds frequently to 10

18        occasionally, standing two in eight hours, and sitting six in eight hours,

19        and occasional climb, bend, or stoop.  Any jobs such a functionally

20        restricted person could perform?

21   (<u>Id.</u> at 41-42.)  The VE testified that such an individual could still perform the jobs

22   of ticket taker and small products assembler, but at reduced numbers.  (<u>Id.</u> at 42.)

23        The ALJ ultimately adopted the RFC as reflected in the first hypothetical.

24   (<u>Id.</u> at 18.)  Based on this finding and the VE's testimony, the ALJ found that

25   Plaintiff was capable of performing work as a ticket taker and small products

26   assembler.  (<u>Id.</u> at 20.)

27        First, Plaintiff's argument that the ALJ failed to include a limitation to

28   simple routine work in the hypothetical is erroneous.  The ALJ expressly included

14

such a limitation in his hypothetical question to the VE.  (Id. at 41.)  Furthermore, the ALJ's inclusion of a limitation to simple routine tasks adequately encompassed Plaintiff's limitations in concentration, persistence, and pace.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-75 (9th Cir. 2008) (a limitation to simple and routine work accurately encompasses a claimant's limitations in his ability to maintain concentration, persistence, and pace).

However, whether the ALJ was remiss in failing to include additional limitations in the hypothetical is dependent upon the ALJ's conclusions on remand with respect to the issues detailed in Sections III.B-D, above.  For this reason, upon remand the ALJ should request additional testimony from a VE and pose to the expert a hypothetical question including all of the physical and mental limitations supported by the evidence.

## IV.

## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED THAT Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion.

Dated: October 10, 2012

HONORABLE OSWALD PARADA
United States Magistrate Judge

15